IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

UNITED STATES OF AMERICA,

    Plaintiff,

    v.

OMAR ORDUNO-RAMIREZ,

    Defendant.

Case No. 14-20096-JAR-07

## MEMORANDUM AND ORDER

This matter comes before the Court on *pro se* Defendant Omar Orduno-Ramirez's Motion for Compassionate Release and for sentencing relief under Amendment 821 (Doc. 782).[1] This motion incorporates Defendant's prior motion, in which he sought compassionate release,[2] which the Court dismissed for failure to exhaust,[3] and sentencing relief pursuant to Amendment 821, which the Court denied as premature.[4] The government has not filed another response, but relies on its response to the prior motion, in which the government addressed the failure to exhaust as well as the merits of the compassionate release motion.[5] Thus, the Court proceeds to decide the motion for compassionate release and for sentencing relief under Amendment 821. For the reasons stated below, the Court denies the motion for compassionate release and dismisses the motion for sentencing relief under Amendment 821.

---

[1] Because Defendant appears *pro se*, the Court construes his pleadings liberally and holds them "to a less stringent standard than formal pleadings drafted by lawyers." *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). But the Court will not act as his advocate. *Id.*

[2] Doc. 761.

[3] Doc. 780.

[4] Doc. 765.

[5] Doc. 766.

I.      **Background**

Defendant was charged in a Superseding Indictment with conspiracy and possession with intent to distribute more than 50 grams of methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A)(viii), and 846.[6] On April 13, 2016, Defendant pleaded guilty to the offense with no plea agreement.[7] The offense of conviction had a statutory mandatory minimum sentence of 10 years and a sentencing guideline range of 188 to 235 months.[8] Defendant had no criminal history and received no criminal history points. On January 12, 2017, the Court imposed a sentence of 144 months' imprisonment, followed by five years' supervised release.[9] The Court's sentence was a downward variance based on "[i]n addition to the defendant's difficult family situation (his wife recently passed and he has two minor daughters that are currently being cared for by his two older daughters), the defendant has maintained long-term employment, a long-term residence, and has no criminal history."[10] Defendant appealed his sentence, contending the Court erred in failing to apply a minor role adjustment.[11] The Tenth Circuit affirmed, upholding the Court's findings as to his role in the conspiracy.[12]

On March 28, 2019, the Federal Public Defender filed a § 2255 motion on Defendant's behalf, arguing that the Government violated the Sixth Amendment by intentionally and

---

[6] Doc. 47.

[7] Doc. 276.

[8] *See* PSR, Doc. 429 ¶¶ 71–72.

[9] Doc. 500 at 180–83.

[10] Doc. 469 at 3.

[11] Docs. 151, 531.

[12] 719 F. App'x 830, 833–34 (10th Cir. 2017).

unjustifiably intruding into his attorney-client relationship.[13]  The Court denied this motion,[14] and the Tenth Circuit affirmed.[15]

Defendant is currently incarcerated at Petersburg Low FCI with a projected release date of February 23, 2025.

## II.     Discussion - Compassionate Release

Section 3582(c)(1)(A), as amended by the First Step Act of 2018,[16] permits a court to reduce a term of imprisonment "upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier."

Before reducing a term of imprisonment under the compassionate release provision, a court must find that (1) "extraordinary and compelling reasons" warrant a sentence reduction, (2) such a reduction is consistent with "applicable policy statements issued by the Sentencing Commission," and (3) the applicable sentencing factors set forth in 18 U.S.C. § 3553(a) support such a reduction.[17]  The Court may deny a § 3582(c)(1)(A) motion "when any of the three prerequisites listed in § 3582(c)(1)(A) is lacking and do[es] not need to address the others."[18]  If the Court grants the motion, however, it must address all three steps.[19]

---

[13] Doc. 596.

[14] Doc. 691.

[15] 61 F.4th 1263 (10th Cir.), *cert. denied*, 144 S. Ct. 388 (2023).

[16] Pub. L. No. 115-391, 132 Stat. 5194.

[17] 18 U.S.C. § 3582(c)(1)(A); *see United States v. McGee*, 992 F.3d 1035, 1042 (10th Cir. 2021).

[18] *United States v. Hald*, 8 F.4th 932, 942 (10th Cir. 2021) (emphasis omitted) (quoting *McGee*, 992 F.3d at 1043).

[19] *McGee*, 992 F.3d at 1043 (quoting *United States v. Navarro*, 986 F.3d 668, 670 (6th Cir. 2021)).

### A. Exhaustion

Exhaustion under § 3582(c)(1)(A) is a mandatory claim-processing rule that the Court must enforce when the government invokes it.[20] Here, Defendant provided proof of exhaustion in a Reply[21] he filed *after* the Court dismissed his first motion for compassionate release. The Court is satisfied that Defendant has properly exhausted his administrative rights. The Court thus proceeds to the merits.

### B. Extraordinary and Compelling Reasons

Section 3582(c)(1)(A) requires a district court to find that "extraordinary and compelling reasons warrant a sentence reduction" before it may grant the motion. The court has "the authority to determine for [itself] what constitutes 'extraordinary and compelling reasons.'"[22] That authority "is bounded by the requirement . . . that a reduction in sentence be consistent with applicable policy statements issued by the Sentencing Commission."[23] Before November 1, 2023, the Sentencing Commission had not issued a policy statement "applicable" to § 3582(c)(1)(A) motions filed by a defendant.[24] Thus, § 3582(c)(1)(A)'s consistency requirement did not constrain the Court's discretion to consider whether extraordinary and compelling reasons warranted a sentence reduction.[25]

On November 1, 2023, a new Sentencing Commission policy statement became effective that is "plainly applicable to motions for sentence reduction filed by either the Director of the

---

[20] *See United States v. Hemmelgarn*, 15 F.4th 1027, 1031 (10th Cir. 2021).

[21] Doc. 786.

[22] *United States v. Maumau*, 993 F.3d 821, 832 (10th Cir. 2021).

[23] *Id.*

[24] *See id.*

[25] *Id.* at 836–37.

Bureau of Prisons or a defendant."[26] The policy statement lists grounds that constitute extraordinary and compelling circumstances and provides additional guidance for courts. The listed grounds are medical circumstances, age, family circumstances, whether the defendant was a victim of abuse while in custody, "other reasons," and whether the defendant served an "unusually long sentence" where there has been a change in law.[27] The Sentencing Commission "considered but specifically rejected a requirement that 'other reasons' be similar in nature and consequence to the specified reasons."[28] Rather, the catch-all provision allows the Court to consider any circumstances which are similar "in gravity" to the listed categories.[29]

    Defendant offers the following as extraordinary and compelling reasons justifying his compassionate release in this case: (1) because he has a Final Order of Deportation, he has received unequal treatment while incarcerated as he is ineligible for programs and benefits available to citizens (such as the Residential Drug Program, home confinement, and halfway house), as well as a benefit available to non-citizens (a one-year sentence reduction for achieving rehabilitation programs); (2) he has an excellent record in prison of rehabilitation and a low-risk recidivism assessment; (3) he has received unusual punishment by having limited or no access to phones, computers, the law library, and other communal benefits and programs due to the COVID-19 pandemic; (4) he has a viable release plan including a job offer to work construction in Las Vegas, Nevada; (5) he would have received a lower sentence today because he would

---

[26] *United States v. Bradley*, 97 F.4th 1214, 1217 at n.1 (10th Cir. 2024).

[27] U.S.S.G. § 1B1.13(b).

[28] U.S. Sent. Comm'n, Supp. to Appx. C, Amendment 814, Reasons for Amendment, at 207.

[29] *Id.*; U.S.S.G. § 1B1.13(b)(5).

qualify as a zero-point offender under Amendment 821;[30] and (6) his wife passed away while he has been in prison leaving their four daughters without their primary caregiver.

### 1. Status as a Deportable Alien

Defendant argues that his status as a deportable alien has precluded him from participating in Bureau of Prisons ("BOP") programs and receiving benefits, including opportunities making him eligible for earlier release. But his treatment is not unique and is consistent with BOP regulations. It is a generalized complaint and it does not constitute an extraordinary and compelling reason for compassionate release.[31]

### 2. Rehabilitation and Release Plan

Defendant further argues that he has been assessed as low-risk for recidivism and has an excellent record in prison demonstrating rehabilitation. But rehabilitation alone is an insufficient reason to grant compassionate release.[32] It is merely a factor to consider when analyzing the factors under § 3553. Furthermore, Defendant's offered release plan provides no basis for relief, for he acknowledges that there is a Final Order of Deportation, which renders his deportation certain.

---

[30] The Court separately addresses the motion for relief under Amendment 821 below.

[31] *See United States v. Urias-Avilez*, No. 15-10152-1-JWB, 2022 WL 1754090, at *2 n.4 (D. Kan. May 31, 2022) (noting that the Court would otherwise reject the defendant's claim that the defendant's status as a deportable alien is likely to cause an increase in the severity of his sentence as this is not an extraordinary and compelling circumstance); *United States v. Galaviz*, No. 12-cr-125-19 (CKK), 2023 WL 8170998, at *4 (D.D.C. Nov. 24, 2023) (being categorically excluded, as a deportable alien, from early release is not an extraordinary and compelling circumstance); *United States v. Santillan*, No. 5:18-CR-00048-KDB-DSC-14, 2023 WL 4002526, at *2 (W.D.N.C. June 14, 2023) (being excluded, as a deportable alien, from programming, good time credits, halfway house placement, and home confinement is not an extraordinary and compelling circumstance).

[32] *United States v. Mata-Soto*, 861 F. App'x 251, 255 (10th Cir. 2021).

### 3. Restrictive Conditions of Confinement During Covid-19 Pandemic

Like everyone else who was incarcerated during the COVID-19 pandemic, Defendant suffered more restrictive conditions. Again, this is a generalized complaint, not unique to Defendant and not an extraordinary and compelling circumstance.

Generally, "a prisoner who challenges the conditions of his confinement must do so through a civil rights action."[33] Nonetheless, the Sentencing Commission's recent policy statement includes guidance on the degree to which conditions of confinement constitute extraordinary and compelling circumstances.[34] But the policy statement makes clear that pandemic-related conditions of confinement must be specific to the defendant to constitute extraordinary and compelling circumstances. None of the conditions cited by Defendant are specific to him; they are issues impacting all prisoners. Crediting the generalized conditions recited in Defendant's motion would justify compassionate release for all prisoners who were housed at his facility during the pandemic. Courts have consistently denied this type of claim raised in a compassionate release motion.[35]

### 4. Caregiver for Daughters

Defendant's wife passed away while he has been incarcerated, leaving their four daughters without their primary caregiver. But Defendant has not established that he is the sole

---

[33] *Palma-Salazar v. Davis*, 677 F.3d 1031, 1035 (10th Cir. 2012) (citing *McIntosh v. U.S. Parole Comm'n*, 115 F.3d 809, 812 (10th Cir. 1997)).

[34] U.S.S.G. § 1B1.13(b)(1).

[35] *See, e.g.*, *United States v. Farmer*, No. 19-CR-427 (LTS), 2022 WL 47517, at *4 (S.D.N.Y. Jan. 5, 2022) (months of lockdowns and lack of access to programming during the pandemic did not justify granting motion for compassionate release); *United States v. Ogle*, No. 15-cr-40042-JPG-003, 2022 WL 2307377, at *4 (S.D. Ill. June 27, 2022) (limited phone calls, lack of visits, and restricted movements were reasonable restrictions in light of need to control spread of COVID-19); *United States v. Peterson*, No. 1:17-cr-20243, 2021 WL 2682819, at *3 (E.D. Mich. June 30, 2021) (restrictive confinement conditions were hardships endured by many if not all of defendant's fellow inmates).

available caregiver for his children per the requirements of Section 1B1.13(b)(3)(A).[36] In fact, this Court granted a downward variance based on this family circumstance, finding that Defendant's two minor daughters were being cared for by his two older daughters in the aftermath of their mother's death. Moreover, given that Defendant likely faces immediate deportation based on the Final Order of Deportation, he has not established that he will be available to take care of his two minor daughters if they reside in the United States.

### 5. "Other reasons" including rehabilitation and other § 3553 factors

Finally, Defendant urges the Court to reduce his sentence based on "other reasons," under the policy statement that lists grounds including medical circumstances, age, family circumstances, whether the defendant was a victim of abuse while in custody, or "other reasons" that are similar "in gravity" to the listed categories.[37] He has raised his family circumstances and rehabilitation and the combination of all his proffered circumstances as a basis for relief. But the Court does not find his rehabilitation a compelling reason, and, for the reasons explained above, neither are his family circumstances.

Moreover, even if the Court found any further extraordinary and compelling reason, the Court finds that the § 3553 factors weigh heavily against reducing his sentence. Those factors include: (1) "the nature and circumstances of the offense and the history and characteristics of the defendant"; (2) "the need for the sentence imposed . . . to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense"; (3) "the need for the sentence imposed . . . to afford adequate deterrence to criminal conduct"; (4) "the

---

[36] *See, e.g.*, *United States v. Burrough*, No. 3:04-cr-00191-FDW, 2022 WL 2318512, at *5 (W.D.N.C. June 28, 2022) (generally defendant must show he is the sole available caregiver for his minor child or a closely related and incapacitated adult family member).

[37] U.S. Sent. Comm'n, Supp. to Appx. C, Amendment 814, Reasons for Amendment, at 207; U.S.S.G. § 1B1.13(b)(5).

need for the sentence imposed . . . to protect the public from further crimes of the defendant"; and (5) "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct."[38]  "[T]he facts allegedly establishing extraordinary and compelling reasons for release . . . . are relevant to the § 3553(a) analysis."[39]

Though Defendant has no criminal history, is assessed at low risk of recidivism, and is subject to immediate and certain deportation, the other factors weigh against reducing his sentence.  The nature and seriousness of his offenses and the need to promote respect for the law and provide just punishment in this case weigh heavily against Defendant.  He was involved in an extensive, large-scale drug trafficking organization that trafficked in more than 86 kilograms of ice methamphetamine, as well as heroin, cocaine, and marijuana.  Defendant was a courier of 51 pounds of methamphetamine and 4 kilograms of cocaine, as well as heroin, marijuana seeds, marijuana fertilizer, and drug proceeds over the course of multiple trips.  Defendant was also involved in the marijuana grow operations that resulted in the seizure of 89,500 marijuana plants.  Defendant was directly involved in the transportation of undocumented aliens from Mexico to Kansas City to work in the marijuana grow operations.

### III.     Discussion - Amendment 821

Defendant's motion, construed liberally, seeks a reduction in sentence based on Amendment 821 to the United States Sentencing Guidelines pursuant to 18 U.S.C. § 3582(c)(2).  Defendant maintains that he was assigned no criminal history points and that, accordingly, he is a zero-point offender entitled to a decrease in two offense levels.

---

[38] 18 U.S.C. § 3553(a).

[39] *United States v. Bradley*, 97 F.4th 1214, 1218 (10th Cir. 2024) (quoting *United States v. Hald*, 8 F.4th 932, 947 (10th Cir. 2021)).

9

"A district court does not have inherent authority to modify a previously imposed sentence; it may do so only pursuant to statutory authorization."[40]  Section 3582 allows for a possible sentence reduction for a defendant "who has been sentenced to a term of imprisonment based on a sentencing range that has subsequently been lowered by the Sentencing Commission."[41]  The Sentencing Commission amended the United States Sentencing Guidelines effective November 1, 2023.[42]  Part A of Amendment 821 limits the criminal history impact of "status points," and Subpart 1 of Part B of Amendment 821 creates a new guideline, § 4C1.1, that provides for a decrease of two offense levels for "Zero-Point Offenders."[43]

Defendant fails to qualify for a retroactive reduction under U.S.S.G. 4C1.1 because the Guidelines state that "the court shall not reduce the defendant's term of imprisonment under 18 U.S.C. § 3582(c)(2) and this policy statement to a term that is less than the minimum of the amended guideline range."[44]  Here, if the Court were to apply the two-level reduction for Zero-Point Offenders, Defendant's offense level would decrease from 36 to 34, resulting in an amended guidelines range of 151 to 188 months.  Defendant's 144-month sentence is below the minimum of that range. Because the reduction is not authorized, the Court lacks jurisdiction to reduce Defendant's sentence.[45]

---

[40] *United States v. Mendoza*, 118 F.3d 707, 709 (10th Cir. 1997).

[41] *See* 18 U.S.C. § 3582(c)(2).

[42] U.S. Sent'g Guidelines Manual (U.S. Sent'g Comm'n 2023).

[43] U.S. Sent'g Guidelines Manual app. C Supp., amend. 821 (U.S. Sent'g Comm'n 2023).

[44] U.S.S.G. § 1B1.10(b)(2)(A).

[45] *See, e.g.*, *United States v. Stoneking*, No. 08-20059-JWL, 2024 WL 81207, at *2 (D. Kan. Jan. 8, 2024) (declining to reduce defendant's sentence below the amended guidelines range); *United States v. Polanco-Gonzalez*, No. 17 CR. 688 (VM), 2024 WL 2305153, at *1 (S.D.N.Y. May 21, 2024) (same); *United States v. Amarante-Perez*, No. 3:20-CR-00135 (VDO), 2024 WL 4382756, at *3 (D. Conn. Oct. 3, 2024) (same).

## IV. Conclusion

The Court denies Defendant's motion for compassionate release and his motion for sentencing relief under Amendment 821 is dismissed for lack of jurisdiction.

**IT IS THEREFORE ORDERED BY THE COURT** that Defendant's motion for compassionate release (Doc. 782) is **denied.**

**IT IS FURTHER ORDERED** that Defendant's Motion for a sentence reduction under Amendment 821 (Doc. 782) is **dismissed.**

**IT IS SO ORDERED.**

Dated: December 3, 2024

S/ Julie A. Robinson
JULIE A. ROBINSON
UNITED STATES DISTRICT JUDGE
